```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  SOUTHERN DISTRICT OF GEORGIA
                         AUGUSTA DIVISION
```

| | |
|---|---|
| CHARLES EVERETT WILLIAMS, | * |
| Plaintiff, | * |
| v. | *   CV 119-179 |
| FPL FOOD, LLC, | * |
| Defendant. | * |

## O R D E R

Before the Court is Defendant FPL Food, LLC's ("Defendant" or "FPL") motion for summary judgment. (Doc. 33.) The Clerk has given Plaintiff Charles Williams notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The motion has been fully briefed and is ripe for decision. For the following reasons, the motion is granted.

### I. BACKGROUND

Plaintiff began working at FPL in June of 2018 through a staffing agency. (Williams Dep., Doc. 34-3, at 45-46.) Plaintiff became a full-time employee of Defendant in September of 2018 at

Defendant's meat processing plant. (Id. at 45-46, 57.) Plaintiff worked in the boning room, where he would use an air injector to separate meat from cow carcasses. (Id. at 57.) After the air is injected, the carcasses go through a nitric oxide shower to decontaminate the meat. (Id. at 57-58.) Plaintiff was stationed close to the shower and would often have to enter the shower to untangle meat, causing him to become soaked in the chemical solution. (Id. at 58, 167.)

In June of 2018 Plaintiff began seeing his primary care physician, Dr. Lamberts, for respiratory issues.[1] (Id. at 51-52, 256-57.) Dr. Lamberts treated Plaintiff for his symptoms on multiple occasions and found that Plaintiff's condition was "difficult to treat" and did not respond well to antibiotics, steroids, or inhaled medications. (Doc. 36-8.) Plaintiff's symptoms ultimately required an emergency room visit in May of 2019. (University Hospital Notes, Doc. 36-7.)

FPL excused Plaintiff from work upon the presentation of doctor's notes for the dates of November 14, 2018; May 29 and 30, 2019; June 10 and 11, 2019; and June 25 and 26, 2019. (Doctor's Notes, Docs. 33-13; 33-14; 33-15; 33-16.) Plaintiff was also

---

[1] Plaintiff's symptoms included breathing problems, light-headedness, dizziness, shortness of breath, and coughing. (Williams Dep. at 59.)

2

excused from work from June 26 to July 1, 2019 and again from July 2 to 9, 2019. (Docs. 33-20; 36-9.)

On or around June 26, 2019, Plaintiff brought a letter from Dr. Lamberts to Defendant. (See Dr. Lambert Letter, Doc. 36-8.) The letter states that Dr. Lamberts had treated Plaintiff for his symptoms and that Defendant should limit Plaintiff's exposure to the chemicals in his workplace. (Id.) Defendant's human resources manager, William Blythe, received the letter sometime before Plaintiff's last day of work, which was July 9, 2019. (Blythe Dep., Doc. 34-1, at 29-33.) Upon receipt of the letter, FPL moved Plaintiff to the kill floor, where no nitric oxide solution was used. (Id. at 31-33.) But that day on the kill floor was Plaintiff's last workday at FPL. (Id. at 32-33.)

In contemplation of future medical examination, on July 9, 2019, Plaintiff delivered a notarized letter to FPL's human resources administrator Jessica Bokknight. (Bokknight Dep., Doc. 34-2, at 19-20; July 9, 2019 Letter, Doc. 33-27; Williams Dep. at 61-62.) The body of the July 9, 2019 letter read, "I Charles Williams don't feel medically safe in returning back to work environment [sic] at this time, until all medical procedures are completed. I don't want to risk further harm to my health." (July 9, 2019 Letter.) When Plaintiff presented the letter to Ms. Bokknight, he explained that the letter was intended as a request for a temporary leave of absence and not a resignation notice.

3

The letter did not mention his future medical examination scheduled for November of 2019.[2] (Williams Dep. at 61-62, 113.) Ms. Bokknight showed the letter to Mr. Blythe, then returned to Plaintiff with a separation notice - indicating "resignation" as the reason for separation - to which Plaintiff objected. (Id. at 113-14; Separation Notice, Doc. 33-30.)

Ms. Bokknight remembered the event differently. Upon receipt of the letter, she recalled asking Plaintiff if he intended to resign, to which he responded, "yes." (Bokknight Dep. at 21-22.) Regardless of the actual sequence of events, Plaintiff's last day at FPL was July 9, 2019.

On July 16, 2019, Plaintiff filed a charge of disability discrimination against FPL with the Equal Employment Opportunity Commission ("EEOC"). (EEOC Charge, Doc. 33-33.) The charge's particulars state:

> I was hired by [FPL] on or about September 1, 2018 as an Air Injector. I am a person with a known disability. On June 26, 2019, I made my employer aware of my disability. Also, on June 26, 2019, me [sic] physician placed me on sick leave with a return date of July 9, 2019. On July 9, 2019, I was discharged by a human resources representative.
>
> I was not given a reason for my discharge, I was informed that I had resigned.
>
> I believe that I have been discriminated against because of . . . my disability in violation of Title I

---

[2] That examination resulted in referral to a pulmonary specialist, who diagnosed Plaintiff with asthma. (Doc. 36-17; Williams Dep. at 67-68.)

4

of the Americans with Disabilities Act of 1990, as amended.

(EEOC Charge.) The EEOC issued a Dismissal and Notice of Rights, including Plaintiff's right to sue, on October 4, 2019. (Doc. 33-34.) Plaintiff then filed a complaint *pro se* on October 16, 2019 but is now represented. He asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Defendant now moves for summary judgment on all of Plaintiff's claims.

## II. JURISDICTION

Federal question jurisdiction under 28 U.S.C. § 1331 exists because Plaintiff's claims arise out of two federal statutory schemes. Venue is proper in this Court because Defendant maintains its principal place of business in Augusta, Georgia. (See Def.'s Statement of Material Facts, Doc. 33-1, ¶ 1.)

## III. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the

5

governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)

6

(citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex Corp., 477 U.S. 317). The movant cannot satisfy its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116—17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033—34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule

7

of Civil Procedure 56. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

## IV. DISCUSSION

Defendant argues that Plaintiff has failed to present any evidence sufficient to raise a genuine issue of material fact as to either the ADA or FMLA claims.

### A. FMLA Claims

The FMLA creates a private right of action to protect the rights it confers on employees. White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th Cir. 2015). Among those rights is an entitlement to twelve workweeks of leave during any twelve-month period for one of six qualifying reasons. 29 U.S.C. § 2612(a)(1).[3] One right of action arises when an employer interferes with an employee's exercise of FMLA rights, and another arises when an employer discriminates or retaliates against an employee for opposing any practice unlawful under the FMLA. Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166 (11th Cir. 2014); 29 U.S.C. §§ 2615(a)(1), 2615(a)(2). "Both causes of action require

---

[3] The qualifying reason at issue in this case is found in 29 U.S.C. § 2612(a)(1)(D): "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

8

the employee to establish that he qualified for FMLA leave." Hurley, 746 F.3d at 1167. With respect to Plaintiff's FMLA claims, Defendant argues that Plaintiff fails to meet the threshold requirement of establishing his entitlement to FMLA leave on the basis that he did not suffer from a "serious health condition." See 29 U.S.C. § 2612(a)(1)(D). This argument is dispositive of Plaintiff's FMLA claims.

29 C.F.R. § 825.113 elaborates on what constitutes a serious health condition. Subsection (a) of that regulations provides: "[A] serious health condition entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a).

Defendant argues that Plaintiff has not established that he suffered from a serious health condition, citing to Hurley for the proposition that "the FMLA does not extend its potent protection to any leave . . . simply because the employee has a chronic health condition." Hurley, 746 F.3d at 1168. An employee must be incapacitated by a chronic health condition or undergoing treatment for incapacity caused by the condition in order to be entitled to FMLA leave. Id. ("[T]he FMLA only protects leave for '[a]ny *period of incapacity or treatment for such incapacity* due to a chronic serious health condition.'" (quoting 29 C.F.R. §

825.115(c)) (emphasis in original)). Incapacity is defined as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). In any event, a showing of incapacity is a prerequisite to FMLA protection vis-à-vis a showing of a chronic serious health condition. See Barker v. R.T.G. Furniture Corp., 375 F. App'x 966, 968 (11th Cir. 2010) (affirming grant of summary judgment where Plaintiff failed to demonstrate incapacity as defined in 29 C.F.R. § 825.113(b)); Martyszenko v. Safeway, Inc., 120 F.3d 120, 123 (8th Cir. 1997) (collecting cases for the proposition that "[u]niformly, courts applying the FMLA expressly or impliedly have required a showing of incapacity").

Plaintiff fails to demonstrate incapacity as defined in 29 C.F.R. §§ 825.113(b) and 825.115(c). He relies on the doctor's note excusing him from July 2 through July 9, 2019 to argue that he was unable to work for a period of at least three consecutive days as required by Section 825.115(a). However, the Court finds the doctor's note insufficient to demonstrate that Plaintiff was incapacitated. First, the doctor's note says nothing about any inability to work or perform other regular daily activities. Rather, it excuses Plaintiff from work "for medical reasons" and notes that Plaintiff may have been able to return to work before July 9 if x-ray results arrived ahead of schedule. Plaintiff also

testified that he was waiting for those test results before returning to work. (Williams Dep. at 63, 220-21.) Nowhere in the note or elsewhere does Plaintiff explain that he was unable to work or perform regular daily activities. Second, the real period of leave at issue is the one beginning on July 9, 2019 and precipitated by Plaintiff's letter on that date. In the letter, Plaintiff states that the reason he could not work is that he did not feel safe to return to work, not that any medical condition prevented him from working.

Without any evidence to show that Plaintiff's ability to work was compromised, he cannot demonstrate the incapacity required to have suffered a serious health condition, and thus his FMLA claims fail. Beyond Plaintiff's failure to demonstrate incapacity, the Court also questions whether the severity of Plaintiff's condition at the relevant time constituted a serious health condition.[4] But

---

[4] At least one court has found that the symptoms Plaintiff suffered from did not constitute a serious health condition. See Boyce v. New York City Mission Soc'y, 963 F. Supp. 290, 299-300 (S.D.N.Y. 1997) ("[S]hortness of breath and chest pains [are] . . . not a 'serious health condition' covered by the FMLA.") (internal quotation marks omitted). Even though Plaintiff was ultimately diagnosed with asthma in November of 2019, the "FMLA and its implementing regulations . . . are not concerned with the potential dangers of an illness but only with the present state of that illness." Singletary v. Stops, Inc., No. 609-CV-1763-ORL-19KR, 2010 WL 3517039, at *14 (M.D. Fla. Sept. 7, 2010) (quotation omitted).

without a showing of incapacity, summary judgment in Defendant's favor is proper on Plaintiff's FMLA claims.

B. ADA Claims

Plaintiff asserts a discrimination and a retaliation claim under the ADA. He fails to make out a prima facie case for either.

1. Discrimination

To establish a prima facie discrimination case under the ADA, Plaintiff must show: "(1) he is disabled; (2) he was a 'qualified individual' at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) he was discriminated against because of his disability." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). If Plaintiff can establish a prima facie case, the burden shifts to Defendant to present admissible evidence demonstrating a legitimate, nondiscriminatory reason for the adverse action. See Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254-55 (1981). If Defendant presents such evidence, the burden returns to the Plaintiff to show that Defendant's proffered reason was pretext for discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253). Here, Plaintiff fails to establish his prima facie case, so the Court does not reach the burden-shifting inquiry.

Under the ADA, disability means: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Plaintiff only addresses the definition in subsection (A). He argues that his asthma and related symptoms including cough, eye irritation, and shortness of breath substantially limit the major life activities of walking, working, breathing, performing manual tasks, and more. See 42 U.S.C. § 12102(2) (defining "major life activities" to include the aforementioned terms).

Plaintiff cites to Wolfe v. Fla. Dep't of Corr., No. 5:10-CV-663-Oc-PRL, 2012 WL 4052334, at *2-3 (M.D. Fla. Sept. 14, 2012), in which the court denied summary judgment where the plaintiff had presented evidence of serious asthma attacks. The plaintiff in Wolfe carried a rescue inhaler with him and used it multiple times daily, but even then sometimes required medical attention. Id. at *3. That plaintiff also presented records of breathing treatments, hospitalizations, and a near-fatal asthma attack requiring resuscitation in the emergency room. Id. Importantly, he also offered evidence that his asthma restricted his ability to participate in the daily activities of sports and exercise, singing, and lawn and kitchen work. Id.

As the court in Wolfe acknowledged, "[a]sthma generally does not constitute a substantial limitation on the major life activity of breathing." Id. at 2 (citing King v. England, No. 3:05CV949MRK, 2007 WL 1845627, *6 (D. Conn. June 22, 2007)); see also Hudson v. Tyson Farms, Inc., 769 F. App'x 911, 917 (11th Cir. 2019) (finding testimony that chemical at food plant aggravated plaintiff's asthma insufficient to establish substantial limitation of any major life activity under ADA). Plaintiff's evidence shows that his asthma presented in a much less severe form than the plaintiff's in Wolfe. Plaintiff relies on his deposition testimony that he "sometimes" has wheezing and breathing difficulties and that after his day on the kill floor he was light-headed, dizzy, short of breath, and coughing. (See Pl.'s Resp. to Mot. for Summ. J., Doc. 36, at 12-13 (citing Williams Dep. at 59, 68).) Without any evidence that his condition substantially limited a major life activity,[5] Plaintiff cannot establish he was disabled to make out

---

[5] When a plaintiff claims he or she is substantially limited in the major life activity of working, the Eleventh Circuit asks whether the plaintiff's condition

> significantly restricts [his or her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. . . . [W]e consider the manner in which the individual is limited in the activity as compare to the general population, and may consider the difficulty, effort or time required to a major life activity . . . .

14

his prima facie ADA case. Summary judgment in Defendant's favor is therefore appropriate on Plaintiff's ADA discrimination claim.

## 2. Retaliation

A plaintiff claiming retaliation in violation of the ADA must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) a counterfactual causal link between the two. See Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir. 2016).

An employee with a good faith and objectively reasonable belief that his activity or expression is protected by the ADA satisfies the first retaliation element. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998). A request for a reasonable accommodation made in good faith suffices. See id. ("[I]t would be sufficient for him to show that he had a good faith, objectively reasonable belief that he was entitled to [an] accommodation[] under the ADA.") Plaintiff relies on his July 9, 2019 letter stating his discomfort with returning to work until his medical procedures had been completed, arguing that it constitutes a request for a reasonable accommodation.

Defendant argues that Plaintiff's leave request was unreasonable because it was for an indefinite duration. It is

---

Hudson v. Tyson Farms, Inc., 769 F. App'x 911, 916 (11th Cir. 2019) (citations omitted). Plaintiff has presented no such evidence - only allegations.

15

well established in the Eleventh Circuit that "a request for indefinite leave is not a reasonable accommodation. . . ." Monroe v. Fla. Dep't of Corr., 793 F. App'x 924, 928 (11th Cir. 2019). Further, a leave of absence may be a reasonable accommodation where it would allow an employee to continue work in the immediate future, but the leave would be unreasonable if it would only allow the employee to return to work at some uncertain point in the future. See Billups v. Emerald Coast Utils. Auth., 714 F. App'x 929, 935 (11th Cir. 2017) (citations and quotations omitted). Plaintiff cites to his deposition testimony that his test results clearing him to work returned only four or five days after his last day at FPL to argue that his return to work would have been in the immediate future. (See Williams Dep. at 64.) But Plaintiff presents no evidence that at the time he made his request for leave, the leave would only be for four or five days. Plaintiff's July 9, 2019 letter only stated that he would not return to work until all medical procedures were completed; it did not indicate when that might be. Without at least some additional information explaining when those procedures were expected to be completed, such a request is for an indefinite period, and thus Plaintiff's requested accommodation was unreasonable. Summary judgment for Defendant is appropriate on Plaintiff's ADA retaliation claim.

## V. CONCLUSION

Upon the foregoing, Defendant's motion for summary judgment (Doc. 33.) is **GRANTED**. The Clerk is directed to **CLOSE** this case, **TERMINATE** all outstanding motions and deadlines, and **ENTER JUDGMENT** for the Defendant.

**ORDER ENTERED** at Augusta, Georgia this 23rd day of March, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA